**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JOHNNY W. SALTER,**

      **Plaintiff,**

v.                                                                   Case No. 8:09-cv-415-T-17TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was fifty-two years old at the time of his administrative hearing on remand in April 2008. He stands 5' 11" tall and weighed about 250 pounds. Plaintiff has an eleventh grade education. His past relevant work was as a delivery driver, maintenance worker, and road construction worker. Plaintiff protectively filed an application for disability benefits in December 2003, alleging disability as of February 4, 2003, by reason of severe low back pain and wrist injuries. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge ("ALJ") in October 2006. The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ. At the outset of the hearing, Plaintiff amended his claim and requested a closed period of disability between February 1, 2003, and May 1, 2005. (R. 741).

Plaintiff testified he suffered an on-the-job injury to his neck and low back in about February 2003. A few months later, he injured his left shoulder and mid-back in an automobile accident. Through the closed period, Plaintiff claimed that he could not work at any job due to radiating pain in his neck, left shoulder, low back, and legs caused by bulging discs. Plaintiff testified that after his on-the-job injury his pain was at a level of seven to eight. This condition was aggravated after the automobile accident. He estimated the pain thereafter was at a level of nine to nine and a half every day, all day. It appears that he was treated with medications and muscle relaxers and eventually began using a TENS unit several days each week. He had no surgeries. At the time of the administrative hearing he was driving a couple of times a week. (R. 742-49).

The ALJ also took testimony from Steven Simon, a vocational expert ("VE"). Initially, the VE classified Plaintiff's former work as a highway maintenance worker, van driver, and maintenance engineer as medium to very heavy exertional work at the semi-skilled level. On a hypothetical assumption of an individual of Plaintiff's age, education, and work experience, and unable to perform Plaintiff's past work but capable of light exertional work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but no climbing vertical ladders, scaffolds, or ropes or work at unprotected heights, the VE identified

jobs such as cashier II, ticket seller, assembler, and hand packer or packager as work available to such individual. The VE opined that Plaintiff had some limited skills related to his past driving work that might transfer to other jobs in the light exertional category. (R. 749-52).

By decision of November 24, 2006, the ALJ concluded that Plaintiff was under a disability between February 4, 2003, and April 30, 2005.[1] However, because of medical improvement as of May 1, 2005, the disability ended. (R. 30-37).

On June 8, 2007, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and directed a new hearing for further development of the evidence related to various evaluations concerning Plaintiff's residual functional capacity. The order also directed that a medical expert be obtained to clarify the nature and severity of Plaintiff's impairments. (R.38-41).

The administrative hearing on remand was conducted April 29, 2008. Plaintiff was present with a non-attorney representative and testified in his own behalf. Additionally, the ALJ again took testimony from Dr. Simon, the vocational expert. Plaintiff reiterated that he had not worked since February 2003. At that time, he was working road construction for the city. He held a CDL license and drove trucks of various sorts. Prior to that work he had worked loading furniture for a van line. He also had done maintenance work and worked as a handy man at an apartment. He acknowledged that he had tried other work, but it aggravated his pain and he would have to sit down for an hour or an hour and a half.

---

[1] The ALJ found that Plaintiff' spinal condition met the criteria of the listing at 1.04C during the closed period but not thereafter. (R. 34).

3

Plaintiff testified that he can sit for "a good while," but then the pain develops in his neck, shoulders, and down his legs. He described numbness in his legs and severe pain to his ankles. He also claimed a four percent disability rating under Workers Compensation for an injury he sustained to his left wrist while working for the city. He injured two ligaments and underwent surgery in the mid-90's. Thereafter, he had to do lighter type work where he did not lift more than ten pounds with his left hand. Instead of doing the heavier road construction work, he drove a truck. At some point, he was given a position on the crew directing traffic using a flag. He occasionally used a wrist brace thereafter to assist with lifting and alleviate the pain. He was able to perform at this lighter level until he was hit by a car. When he was struck by the vehicle, his back and neck were twisted. A short time thereafter, he was involved in another automobile accident while going home. This accident aggravated his neck and back pain. The resulting limitations meant he could not do the work for the city and he was let go. Despite his back and neck problems, he tries to do things but cannot do anything continuously.

By his account, the main problem continues to be his low back pain, which radiates into his legs. Plaintiff has not undergone surgery on the recommendation of his doctor. He underwent a functional capacity assessment and was told by the examiner to avoid heavy lifting, running, and too much walking. He was also told not to lift more than ten pounds with his left hand. Plaintiff is right hand dominant and he chooses not to lift much weight with his right hand for fear of injuring himself further. He said he exercise his left hand and uses massage on his back and neck. He also uses a TENS unit and takes prescription medication.

He walks, sits, lies down, and hurts on a daily basis. He attempts to wash dishes but bending causes pain. (R. 761-790, 801-02).

Next, the ALJ took testimony from Dr. Simon. The VE initially classified Plaintiff's work at the light exertional level, this time noting that certain of Plaintiff's work for the city was at this level, as was some of his maintenance/handy man work. The VE was asked to testify on an assumption of a person of Plaintiff's age and education capable of performing light exertional work with occasional climbing, balancing, stooping, kneeling, crouching, or crawling but no climbing vertical ladders, scaffolds, or ropes or work at unprotected heights, and was limited to lifting or carrying no more than ten pounds in the left hand. After clarifying Plaintiff's work as a maintenance worker and handyman, the VE opined that a hypothetical individual could perform such work as actually performed by Plaintiff, as well as the work performed by Plaintiff when he was a flagger and driver of light trucks for the city. Such hypothetical individual could also perform the work of a cashier II, ticket seller, toll collector, counter rental clerk, fast food worker, and office helper as generally performed. In response to questions by Plaintiff's representative, the VE indicated that additional breaks in the morning and afternoon because of pain lasting thirty to forty minutes would not be tolerated. (R. 792-805).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail. Plaintiff's date last insured for disability benefits was June 30, 2008.

By his decision of July 25, 2008, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease of the cervical spine with multi-level

5

dessication, mild to moderate disc protrusion and annular tear, mild to moderate bulges, degenerative changes and bulges of the lumbar spine, diabetes, and history of torn ligaments in the wrists, he nonetheless had the residual functional capacity to perform a restricted range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform his past work as maintenance engineer, flagger, and driver as actually performed, as well as other jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 12-21). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84

6

F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The weights accorded by the ALJ to the opinions of certain treating medical providers and to a non-examining state medical reviewer are not supported by substantial evidence; and

(2) The ALJ failed to function as a "reasonable fact finder" and to accord the appropriate evidentiary weight to a functional capacity evaluation (FCE) conducted by a licensed physical therapist. (Doc. 12).

On his first claim, Plaintiff argues that the ALJ failed to give appropriate weight to the (unspecified) opinions and evidence from his treating orthopedic surgeon, Dr. Robert Henderson, whose records, when considered as a whole, find that Plaintiff is unable to work by reason of his back impairments. Plaintiff urges that the reasons given by the ALJ in discounting Dr. Henderson's opinions are inadequate, the objective evidence supports Dr. Henderson's conclusion, and the ALJ misread the reports from Dr. Antonio E. Castellvi, a spine surgeon, and Dr. Rodolfo Gari, a pain management specialist. Plaintiff also asserts that the ALJ gave inappropriate weight to the opinion of a non-examining state agency doctor. He asserts further that the ALJ's reversal of his prior decision awarding benefits is difficult to reconcile with the new conclusion. According to Plaintiff, it is a "draconian response" to his having requested review of that decision. (Doc. 12 at 14-19).

In response, the Commissioner simply urges that the ALJ fairly assessed the records and opinions from each of these doctors and gave adequate reasons for discounting their

opinions. He notes that neither Dr. Castellvi nor Dr. Gari imposed any work limitations; nor did other treating doctors such as primary care physicians Dr. Karon Locicero and Dr. Olayinka Bankole. (Doc. 15 at 5-11).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. § 404.1527(d)(2). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). A treating source's opinion that a claimant is unable to work, however, is not a "medical opinion" as defined by the regulations, but an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e).

After review of the medical evidence, particularly that of the treating doctors, I find no error requiring a remand on this first claim.[2] Plaintiff is correct that the decision reflects

---

[2]At the outset, I agree with Plaintiff that it is troubling that the same medical evidence the ALJ relied on in initially finding that Plaintiff suffered a listing-level impairment of his spine for a period of time is now viewed as less severe and does not result in the finding disability. On the other hand, it is inexplicable that the Plaintiff would have requested a review of a decision that awarded him benefits for the precise period for which he sought

9

the ALJ gave "little weight" to the opinions of Dr. Henderson after concluding that the doctor's opinions were inconsistent internally and with the objective medical evidence, which revealed only mild degenerative changes in the back. However, Plaintiff is incorrect in asserting that the "the sum and substance of Dr. Henderson's multiple opinions is that the claimant is unable to work." By my review, a fair reading of the doctor's notes reflects that he believed Plaintiff could perform some level of work but could not perform his past work for the city. When read as a whole, the records allow for the conclusion that Dr. Henderson gave differing opinions on Plaintiff's ability to work. For example, in September 2003, some six months after he began treatment, the doctor noted that, "I released hm to light duty work." (R. 371). This note followed an earlier note from May 2003, in which the doctor cited the MRI studies and noted that Plaintiff was at maximum medical improvement in April, "with three percent for his neck and three percent for his back." (R. 372). In February 2004, the doctor noted that Plaintiff would have trouble with any kind of overhead lifting and repetitive bending, stooping, climbing, and squatting and lifting over 15 pounds on a repetitive basis.[3] (R. 370). In May 2004, the doctor continued to treat conservatively with medications. (R. 369). In his September 2004 note, Dr. Henderson stated, "[t]his gentleman has some mild degenerative changes in his back from an injury. . . . He has a 10 pound lifting restriction at work, if they can find something with those restrictions then I have no problem letting him

---

benefits. The fact remains that the initial favorable decision was vacated by the Appeals Council. And, Plaintiff makes no claim on this appeal that the Appeals Council erred in granting his request for review, thus vacating the decision and remanding the claim for reevaluation of the medical evidence.

[3] I note that the ALJ appears to have credited these limitations apart from the limitation for overhead lifting as evidenced in his residual functional capacity assessment.

10

return to work." (R. 583). He next saw Plaintiff in January 2005. (R. 584). Then, in December 2005, this doctor signed a Work Status Report indicating that Plaintiff was totally disabled from doing his regular job. (R. 582). Notes from 2006 were not particularly remarkable. (R. 721-22). In October 2007, the doctor noted Plaintiff's continued complaints of pain but that the recent MRI of the back show little change. He further noted that surgery for four levels of bulges would aggravate his condition rather than cure him and that he would have to be treated symptomatically. (R. 717). On this record, the ALJ was not obliged to conclude that Dr. Henderson found Plaintiff disabled from all work. In fact, his reports suggest the contrary. In any event, to the extent that the doctor intended to suggest total disability, the ALJ accurately noted that the doctor's statements were inconsistent with that conclusion. As for the objective evidence, while it revealed multi-level disc bulges in the spine, even this doctor noted therefrom that the degenerative condition was "mild." While the ALJ could have better stated his finding of inconsistency within the doctor's records and the inconsistency he saw with the objective record, Plaintiff does not demonstrate any error requiring a remand on the basis of the reasons given.

It is also significant to note that Plaintiff does not specifically challenge the ALJ's RFC finding on this appeal. Ultimately, even if the ALJ should have concluded that Plaintiff could not return to his "regular" work as stated by this doctor, Plaintiff makes no showing that he was incapable of performing the other work identified by the VE under this RFC assessment.[4] As the decision reflects, in addition to finding that Plaintiff could return to the

---

[4] It is unclear what type of work this doctor considered Plaintiff's regular work. By Plaintiff's testimony, his work for the city changed over time from heavy road work to lighter work just driving a truck and working as a flagger. This aspect of the work history was not

11

light duty work to which the city assigned him after he injured his wrist, the jobs of driver and flagger, the VE also identified a number of other type jobs Plaintiff could do. On this appeal, Plaintiff makes no effort to demonstrate that Dr. Henderson's opinions contradict these conclusions.

I also find no merit to the claim that the ALJ mischaracterized the finding of Dr. Castellvi when he stated that the doctor diagnosed "only mild degenerative changes in the back."[5] While it is correct that the doctor made no such statement, it is Plaintiff who mischaracterizes the ALJ's conclusion. As the decision reflects, the ALJ noted the doctor's diagnosis of degenerative disc disease of the lumbar spine without myelopathy and his findings on examination of normal gait, strength, and sensory response, and negative straight leg raises in the back. From this, the ALJ concluded that such supported that Plaintiff had only mild degenerative changes in the back. Plaintiff simply makes no showing that the ALJ failed to properly address the report. And, more significantly, he makes no showing that the ALJ's conclusion about this report is unsupported.

Plaintiff makes a similar claim concerning the ALJ's handling of Dr. Gari's reports. Thus, he asserts that the ALJ inappropriately assumed that the doctor's notation of "disabled"

---

well developed at the first hearing. But, as developed at the hearing on remand, Plaintiff's lighter duty work with the city was determined to be work at the light exertional level as it was actually performed. It is only this aspect of Plaintiff's former work that the ALJ found Plaintiff capable of performing, along with the other light duty jobs identified by the VE as consistent with Plaintiff's RFC. When Dr. Henderson's records are considered as a whole, they largely support the ALJ's RFC conclusion.

[5]Plaintiff was examined on one occasion by Dr. Castellvi for purposes of a second opinion. The doctor diagnosed lumbar or lumbosacral intervertebral disc degeneration and displacement of lumbar intervertebral disc without myelopathy. He recommended further lumbar MRI study and a referral for therapuetic injections. (R. 428).

12

in relation to Plaintiff's work status reflected on Plaintiff's self-reported status rather than the doctor's assessment. By this argument, that assumption was inappropriate in light of Dr. Gari's long-term treating relationship with Plaintiff and his treatment by significant pain medications and injection therapy. Again, I find no merit in the claim.

In addressing Dr. Gari, the ALJ recognized the long-term treating relationship and his findings of tenderness, spasm, and limitation of motion in the back and neck, but normal gait and strength. The ALJ also noted that treatment was conservative by way of medication, epidural steroid injections, and a TENS unit. Then, the ALJ stated, "Dr. Gari's computerized progress notes show work status disabled, but it appears to be the claimant's reported status not an assessment made by the physician." (R. 17). A review of the forms used by the doctor shows this entry actually reads: "Work Status per patient." In those instances where a further entry was made, it reflects disabled. *See e.g.* (R. 590, 592, 595, 598). By my consideration, the ALJ's conclusion that such reflected what Plaintiff was reporting rather than the doctor's assessment is entirely correct. Such is further supported by the additional finding by the ALJ that "Dr. Gari did not otherwise indicate any restrictions or limitations of the claimant's activities." Thus, a fair reading of the medical records supports the ALJ's conclusion that the notations referred to actually did refer to what Plaintiff was reporting rather than what the doctor assessed.

Finally, Plaintiff complains that the ALJ improperly gave substantial evidence to the opinion of a nonexamining state agency doctor. He notes that in the first favorable decision,

13

the ALJ discounted the opinions of the nonexamining doctors during the closed period under consideration and urges that it is impossible to reconcile the two decisions on this point.[6]

In this Circuit, the opinions of nonexamining doctors are entitled to little weight when contrary to the opinions of examining doctors. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988). Here, Plaintiff's argument fails because he cannot demonstrate a contrary or inconsistent RFC assessment by an examining doctor. While the ALJ determined on this review that the RFC assessment of the nonexamining doctor in August 2004 was entitled to substantial weight, the conclusion was based on the fact that the assessment, as modified by the ALJ, was consistent with the available medical evidence.[7] Again, while the apparent flip-flop by the ALJ is troubling, on this appeal I am obliged to find that the adoption, in part, of this RFC was not in conflict of any other assessment by a treating or examining doctor and was therefore permissible. In fact, by my review, the assessment by this nonexamining doctor appears quite consistent with the cumulative reports of Dr. Henderson. In sum, Plaintiff is not entitled to relief on this first claim.

By his second claim, Plaintiff urges the ALJ "perfunctorily" discounted a forty-one page functional capacity evaluation ("FCE") performed by a physical therapist in May 2005. While acknowledging the physical therapist is not an acceptable medical source, Plaintiff

---

[6]It is correct that in the favorable decision, the ALJ discounted the opinions of the nonexamining doctors under the applicable standard. Again, however, that fact is of little import here where the first decision was vacated on Plaintiff's request for review and all concerned started afresh in the evaluation of the claim.

[7]As the decision reflects, the ALJ's RFC assessment was more limiting than that of the nonexamining doctor. Thus, the ALJ credited Plaintiff's complaints concerning his wrist impairment and lifting capacity with his left hand. (R. 17).

14

urges that the complete rejection of his assessment is unreasonable and the FCE surely should have been afforded some weight beyond that afforded the ALJ. (Doc. 12 at 19-20). The Commissioner counters that the ALJ properly rejected the physical therapist's opinion as an unacceptable medical source not entitled to any special weight or consideration and appropriately noted that Plaintiff failed to complete many of the tests during the FCE. (Doc. 15 at 11).

In April 2005, J. Paul Melton performed a FCE of Plaintiff. His conclusion, as set forth in his report reads:

> The results of this testing demonstrate Mr. Salter's inability to meet his former job demands due to impaired lumbar ROM, inability to stand in a forward bent position for prolonged periods and inability to use his hands and shoulders for lifting more than SEDENTARY physical demands at waist to shoulder level only. He does not demonstrate the ability to work below his waist level or more than 16 inches away from his body due to limited lumbar flexion. He demonstrates limited left shoulder ROM and demonstrates impingement type symptoms with passive left shoulder activity, even when distracted. He demonstrates limited cervical movement with complaints of pain in areas consistent with his stated symptoms. Test results demonstrate Mr. Salter has good use of his hands and fingers for pinching, gripping, handling and fingering activities in positions where lumbar ROM is not impaired.

(R. 456-57). The report also noted that certain test results suggested inconsistencies perhaps affecting reliability, in particular regarding lifting activities. Other tests related to carrying, pushing, pulling, crawling, stooping, crouching, kneeling, and climbing stairs were discontinued or stopped for medical or unspecified other reasons. (R. 456). In addressing the report, the ALJ noted generally the limitations revealed by the testing but accorded "little

15

weight" to the opinions because many of the tests were not completed and Mr. Melton, a physical therapist, was not an acceptable medical source under the Regulations. (R. 17).

Plaintiff cites *Reliford v. Barnhart,* 444 F. Supp. 2d 1182 (N.D. Ala. 2006) in support of his argument. In that case, the court determined that the "total rejection of the opinions of the plaintiff's treating physical therapist is improper and unreasonable." *Id.* at 1188 (citing 20 C.F.R. § 416.913(a)). The regulations provide that, in addition to acceptable medical sources, the ALJ may also use evidence from other sources, including therapists, to show the severity of the impairments and how such affects the ability to work. Thus, a blanket refusal to consider the reports from such sources, solely because they are not acceptable medical sources in contemplation of the regulations, would constitute error. However, the circumstances in this case differ from those in *Reliford*. Mr. Melton's report is not a report from a treating physical therapist. Here, the report at issue was obtained by Plaintiff's counsel and appears the product of a one-time evaluation. While the report surely merited consideration, the ALJ was under no obligation to afford it any deference. Further, a fair reading suggests that the report was considered by the ALJ. To the extent that the ALJ rejected the restriction for lifting more than sedentary exertional demands,[8] it is apparent that he did so because the testing in that area was incomplete. Plaintiff fails to demonstrate the inappropriateness of that conclusion. This is especially so where the medical evidence did not support such limitation. Plaintiff himself testified that he had worked with a 10 pound lifting limitation with his left

---

[8]"Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a).

16

hand. He had no restriction for his right hand, and while he declined to testify how much he could lift with his right hand, he acknowledged that he could lift more than 10 pounds but he chose not to so that he would not injure himself. (R. 783). In sum, the decision reflects the ALJ's consideration of the FCE and his discounting of the same for reasons which appear supported on this record. I find the circumstances in *Reliford* are distinguishable.

IV.

While I agree that it is regrettable that Plaintiff lost his closed period of disability, for the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
13th day of May 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record